UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 20-231(6) (JRT/DTS)

UNITED STATES OF AMERICA,

    Plaintiff,

v().

SHARON DENISE MCEWEN,

    Defendant.

**GOVERNMENT'S SENTENCING MEMORANDUM**

For the following reasons, the United States recommends that Defendant Sharon Denise McEwen receive a sentence of 6 months of imprisonment. The United States believes that such a sentence, which is a downward variance below the low end of the applicable Guidelines range, is sufficient, but not greater than necessary, to comport with the Section 3553(a)(2) sentencing factors.

## I. <u>Relevant Facts</u>

### A. **Offense Conduct**

On October 20, 2020, McEwen was charged in a ten-count indictment with conspiracy to commit mail fraud and mail fraud, in violation of 18 U.S.C. §§ 1341 and 1349. McEwen entered a guilty plea pursuant to a plea agreement on December 9, 2020. The circumstances of the offense are set forth in the Presentence Investigation Report (the "PSR," ECF No. 187).

McEwen participated in a large, nationwide telemarketing fraud scheme involving magazine subscription sales. Between 2010 and February 2020, McEwen worked as a telemarketer for a Mississippi-based company called Online Reading

Club Inc., which also did business as Readers Pros. McEwen worked at Readers Pros's telemarketing call center in Oxford, Mississippi.

Readers Pros, and its boss Daniel Mathias, operated a multi-year, large-scale fraud scheme that involved tricking often elderly or otherwise suspectable victims into making large payments in order to purportedly stop or cancel a victim's ongoing magazine subscriptions. Readers Pros conducted the fraud scheme by lying to and tricking victims. Readers Pros preyed on victims who were often fraudulently being charged large amounts by multiple different other magazine companies. These victims were sometimes being charged by as many as a dozen or more different magazine companies, and often received aggressive and threatening calls about the amount of money they owed these other fraudulent magazine companies.

Although Readers Pros claimed to be able to stop a victim's ongoing magazine subscriptions, stop the victim from receiving future calls, or wipeout the money the victim purported owed other companies, in reality, Readers Pros had no relationship with the victim and was unable to actually cancel any of the victim's ongoing magazine subscriptions. While Readers Pros promised to help victims cancel their magazine subscriptions, instead Readers Pros simply took hundreds of dollars from vulnerable victims in exchange for an empty promise.

McEwen worked as a telemarketer at Readers Pros. In that role, she used fraudulent sales scripts, which were provided by the company, to call victims and make a series of deliberate lies and misrepresentations about how Readers Pros could

help the victim cancel what often was an overwhelming number of expensive magazine subscriptions that the victim was receiving.

Specifically, McEwen called victims and falsely claimed that they owed a large outstanding balance for an existing magazine subscription. McEwen then offered that Readers Pros could pay off the outstanding balance in exchange for a one-time payment of $507. McEwen knew that she was lying to victims and that Readers Pros did not have the ability to cancel victims' outstanding balances or ongoing magazine subscriptions. Readers Pros simply collected the money and whatever ongoing balance and existing magazine subscriptions the victims had were not cancelled.

During the approximately decade that McEwen worked at Readers Pros, the company defrauded thousands of victims and collected more than $2.7 million as a result of the fraudulent scheme.

### B. Defendant's Criminal History

McEwen has no previous criminal history. She has a criminal history score of 0, corresponding to a criminal history category of I. (PSR ¶ 82.)

### C. Defendant's Personal History

McEwen was born and raised in Mississippi. She was predominantly raised by her paternal grandparents. Her father relocated to Michigan for employment opportunities. She had no relationship with her mother growing up, whom she did not meet until 2015, when her mother was extremely ill. McEwen described her childhood as comfortable, and she explained that she was well-provided for.

McEwen attended college in Mississippi, and later in Alabama. She played basketball in college. She had her first child in 1990 and her second child in 1996. Her daughter lives near her in Mississippi and works as a dental assistant. Her son is an Olympic athlete who competes in the high jump. McEwen is very involved in his training and competing.

### Argument

#### A. Legal Background

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). "[U]nder the advisory guidelines scheme, sentencing judges are required to find sentence-enhancing facts only by a preponderance of the evidence." *United States v. Scott*, 448 F.3d 1040, 1043 (8th Cir. 2006).

"[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Gall*, 552 U.S. at 49-50; 18 U.S.C. § 3553(a). The Section 3553(a) factors include "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities." 18 U.S.C. § 3553(a).

#### B. The Presentence Investigation and Guidelines Calculations

The United States has reviewed the PSR prepared by the U.S. Probation Office.

The United States did not object to the factual portions of the PSR. The PSR concluded that the total offense level is 24 and the criminal history category is I. Based on this, the Guidelines range term of imprisonment is 51 to 63 months. (PSR ¶ 106.)

C.    **The Appropriate Sentence**

A careful consideration of the Section 3553(a) factors warrants a sentence of 6 months of imprisonment.

1.    The Nature and Circumstances of the Offense.

McEwen's conduct was unquestionably serious and warrants a correspondingly serious sentence. She participated in a large, nationwide fraud scheme that targeted thousands of elderly and otherwise vulnerable victims. Although she knew that she and others at the company were committing fraud, she continued to work there day in and day out and perpetrated the scheme for almost a decade.

Moreover, the version of the fraud scheme conducted by McEwen and others at Readers Pros is particularly egregious. The scheme relied on finding people that were already being victimized by magazine companies—often by multiple magazine companies over a long period of time—and falsely offering to help them. But instead of helping them, McEwen and others at Readers Pros re-victimized those people, while preying on the precise vulnerability that led them to be victims in the first place.

At the same time, McEwen played only a small part in a large-scale fraud. McEwen worked as a telemarketer. She did not own, operate, or manage Readers

5

Pros. She did not develop the fraud scheme or write the fraudulent scripts. Nor did McEwen get rich participating in the scheme—she was only paid a small, hourly wage for her work.

Although McEwen was well-aware that she and others at the company were committing fraud, the fact that Readers Pros operated an office and call center where numerous other telemarketers also worked provided an air of legitimacy to an illegitimate, fraudulent company. In many ways, this allowed Readers Pros to recruit otherwise well-intended individuals like McEwen, who were merely seeking a paycheck, into the fraudulent work. This is not an excuse for McEwen's conduct, particularly in light of how long she worked at the company, although it helps explain how she became involved in it.

2. <u>The History and Characteristics of the Defendant.</u>

In many ways, McEwen had a fairly normal childhood. She grew up being raised by her grandparents in a household with plenty of familial support and recounted that she was well provided for. On the other hand, McEwen had no relationship with her mother and had a limited relationship with her father, who relocated out of state for work opportunities.

3. <u>The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Afford Adequate Deterrence</u>

In light of the seriousness and wide-spread nature of the offense, McEwen requires a sentence that will not only prevent her from committing another offense in the future but will also provide general deterrence for others who operated similar fraudulent schemes brazenly throughout the country for decades. McEwen and others

6

who participate or consider participating in a similar scheme are more likely to be deterred from committing fraud if they learn there are serious consequences, and they will pay a stiff price for it. A significant sentence will promote respect for the law and reflect the damage to victims and the community as a whole as a result of a large-scale fraud scheme that preyed on elderly and otherwise vulnerable victims.

A sentence of 6 months of imprisonment will serve the needs of sentencing to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, and to protect the public from further similar fraud schemes.

## II. <u>Conclusion</u>

For all the above reasons, the United States respectfully requests that the Court vary downward and impose a sentence of 6 months' imprisonment.

Respectfully submitted,

Dated: December 2, 2022

ANDREW M. LUGER
United States Attorney

<u>/s/ *Harry M. Jacobs*</u>

BY: JOSEPH H. THOMPSON
HARRY M. JACOBS
MATTHEW S. EBERT
Assistant U.S. Attorneys